Good morning. The first case this morning is No. 057116, Kelly v. Department of Veterans Affairs. Mr. James. Thank you very much, Your Honor. May it please the Court, Richard James for William Kelly. We're here today because the Court below applied its own test as to prevailingness. The test stated in Rollins, McCormick, and Sumner, which are quoted in pertinent part in the opening brief. The Court below requires that in order to establish prevailingness, there be either an award of the VA benefits sought or a concession of error by the VA or a, quote, court recognition of error, which we take to be a finding of error. The Court below looked at its dispositive order and concluded that none of those three were present, even though in its dispositive order on the merits of the appeal, the Court described two out of three, possibly all three, errors committed in this case. We urge the Court that the way to resolve this appeal is to follow the third, seventh, and ninth circuits in Johnson, Rueda, and Muhar, all cited in the reply brief, apply your decision in Motorola, and find that its test is satisfied. Johnson and the other two cases, Rueda and Muhar, are INS cases. In all three cases, the thing that is important to Mr. Kelly is that all three courts agreed that it was certainly possible on the remands in those instances that the appellants would not prevail at the agency, and yet they found them, nonetheless, to be prevailing parties for the purpose of the appeal. Did he overcome some bar? Had there been some ruling that he couldn't raise ataxia and he somehow overcame that? No, Your Honor. What happened in Mr. Kelly's case on the merits of ataxia and atrophy is that the VA failed in its duty to raise those possibilities for him and looked only at the medical records which established the possibility of an ataxia diagnosis, too. So Mr. Kelly's proposition is... So he didn't ever raise those? He did not at the agency. May I please point out that he was not represented at the agency by a lawyer. He did not acquire a lawyer until the year 2000 when he commenced the appeal to the Veterans Court. Of course, you know your President is quite generous and also accurate as to the efforts to which the VA is supposed to go on behalf of the Veteran. The Veteran essentially carries no burden since year 2000. The Veteran's only burden is to present a facially complete, administratively complete claim that has his name and the benefit that he seeks. Mr. Kelly did that some many years before year 2000. On Agent Orange. Yes, saying essentially, to shorten it, I have balance problems, meaning balance in walking and working, because I was exposed to Agent Orange during my tour in Vietnam. When such a claim is presented after the VCAA in November of 2000, the agency has three choices. It can grant the benefits sought right then and there, arbitrarily and capriciously, and there's nobody to complain. It can, as it should have done in this case, investigate, the VA calls it development, or under the VCAA since year 2000, it may say to the Veteran, we see nothing of value in your claim. If you want to pursue this claim, you have to do it yourself. We won't help you like we usually help Veterans. If you want to find evidence, go get it yourself. If we can help you, let us know. But you see, none of that happened, because his claim was in the era before the VCAA was enacted, and yet this appeal straddles the whole period of the enactment of the VCAA, which clearly shifts the burden now to the VA. It's called in your jurisprudence in Ortiz, the burden of non-persuasion. And it straddles the later VEBEA, Veteran's Appeal, which is the Veterans Educational Benefits Expansion Act, which removed the jurisdictional bar that the court below perceived to pursuit of the ataxia claim. This begins to get complicated, but one of the problems in this case is that both the parties and the court below and the VA have regarded there as being two claims in this case, when there's only one. The two claims are the OPCA atrophy claim and the ataxia claim, but there's no such thing. There's only one claim in this kind of a veterans' benefit case, and it's the claim for disability compensation. Atrophy and ataxia were just two medical theories in support of that claim. The VA should have looked at both. It only looked at one. After five years of struggle in the court below, we finally got an order for Mr. Kelly saying you must consider, if he asks, development of the ataxia claim and then dispose of it on its merits. Now, if that's not prevailing, when that's all he ever asked for from year 2000 in his appeal, then we don't know what is. It is possible that the court below might award the benefit sought, and it has done so, but it's extremely rare because the facts usually remain in dispute and the court below doesn't have fact resolution jurisdiction. Furthermore, the fact finding by the agency rarely has addressed all the elements of a claim by the time the claim gets to the veterans' court on appeal. Instead, it will usually see the appeal presented for the first time on element three, is this disability connected to the man's service? Without any regard to the earlier elements, does he have the requisite status? Does he have a present disability? What would be the rating appropriate in this instance and what would be the effective date? In your case, in Motorola, the court looked back at many of the authorities that have been developed, trying to resolve this issue. What does it take to be a prevailing party when all you've got is a remand to the administrative agency? And it said, remands to administrative agencies are different. The court proceeding, in our case, the proceeding in the veterans' court is a separate proceeding from the administrative proceeding and a remand may constitute the securing of relief on the merits sought by the plaintiff. And the trial court does not retain jurisdiction. Did this remand grant the relief sought? On the merits. On the merits, yeah. Judge Rader... Did he get his benefits? Is it remanded for him to gain his benefits? We can't put this match off any further, can we? It's round two and the question is, which merits do we want to talk about? Your question implies that the merits that we need to address are the merits of the underlying administrative VA claim for veterans' benefits. The answer to your question posed that way is no, but Mr. Kelly says further, it doesn't matter. Look at the other circuits in Johnson, Rueda, and Muhar, and look at Motorola, in which this court, as I take it, also said that the outcome at the administrative agency does not define the result on prevailing parties. Not only that, but look at Schaefer, which is the second to most recent of the Supreme Court decisions in this area. It's a Social Security case. The real issue in Schaefer was timeliness of the application. But it's clear in Schaefer that what happened is the applicant, disappointed with the Social Security's decision, came to the court and got a remand, went back to the agency, and then got the award. But it's my impression that the cases that we see on these issues arise after the proceedings are over and there has been an award satisfactory to the petitioner, and when there has not been, the issue of attorney's fees at some intermediate stage doesn't arise. Is that accurate? I missed the most important first couple of words in your sentence, ma'am. Did you say, it is my impression? It is my impression that this is how these cases reach us, that there are these various proceedings and the question then is at what stage may the attorney's fees be awarded? I think the question is not susceptible of a simple yes or no in order for me to be sure that I connect and answer the question you wanted to have answered. They are serial in this sense. The administrative claim for VA benefits is filed, bubbles a while, ferments, goes to the Board of Veterans' Appeals and is decided there, goes to the court, rarely goes to the court hands down on the award of the benefit as I described earlier. Instead it goes from the Veterans' Court in a remand back to the agency for the agency not just to correct the error but to adjudicate the whole thing again. And that the agency has decided in favor of the petitioner after which the question of attorney's fees arises. But it has been my general impression that when the petitioner or the veteran does not succeed ultimately after all of the ups and downs that veterans sometimes are put through, that the question of attorney's fees at some intermediate stage which allowed the process to continue but which did not produce a satisfactory result for the veteran, that the question of attorney's fees does not arise. Incorrect. Okay, that's my question. The Veterans' Court does not look at each iteration or the final result. The Veterans' Court does look at each iteration of an appeal to its court, not to the final result on the administrative claim. So this can go back, they can dismiss this as a frivolous claim even and you would get attorney fees because it was remanded? Yes. Because why? How did you prevail?  The remand came because of the legislation. So I'm trying, did you win some great battle here? Yes. The great battle is to get the VA to do its job and that is to adjudicate the claim on both medical theories, not just on the OCPA theory. Now I recognize your point that there might be some social interest in whether or not a lawyer should keep getting fees over and over again in the same case. And you see that there are cases like this one that linger in this process, in this case since 1989. And you've seen other examples like that. And the solution is for the VA to do its job right the first time and then nobody gets attorney's fees. Okay. Do you want to save the rest of your time for rebuttal? I think that would be a good idea. Is there something else you want to tell us? We're missing. Thank you. I'll reserve it. Okay. Thank you, Mr. James. Ms. Keneally. May it please the court. This court should affirm the decision of the Court of Appeals for Veterans Claims denying Mr. Kelly's application for attorney's fees pursuant to the Equal Access to Justice Act. Mr. Kelly is not a prevailing party pursuant to EJIA. The remand of his ataxia claim was not due to any specific agency error in the Veterans Court's opinion ordering remand. And Mr. Kelly obtained no merits relief by the remand. How about the failure to do the full evaluation the first time? Well, Your Honor, there was no failure to do a full evaluation the first time. In regards to his OPCA claim for which Mr. Kelly is not seeking EJIA fees, he specifically states that in his brief. That claim was remanded in light of the passing of the VCAA to further establish that claim. The Veterans Court found that as for Mr. Kelly's ataxia claim, that claim was never presented to the Board in the first instance. And all the remand decision allowed was... Well, the basis for the claim was presented to the Board and to the RO. It's the VA's job to develop it. Your Honor, after the VCAA was passed, it was the VA's job to develop the claim. And in fact, that is what happened. The claim was sent back to the agency to develop it. And after that occurred, Mr. Kelly was actually not awarded benefits on that remand and his case is actually on its way back to the Veterans Court. But in terms of your question, yes, his OPCA claim was sent back for further development. But in terms of his ataxia claim, which is the claim for which he's seeking EJIA fees, the Veterans Court ruled that he never presented that claim to the Board in the first instance. And what the Veterans Court did was they used their discretion and gratuitously allowed Mr. Kelly to present that claim in the first instance if he chose to do so because they were sending his OPCA claim back already. And if you read the remand order, it doesn't require the Board to do anything. It only states that if Mr. Kelly presents his ataxia claim in the first instance to the Board, then the Board should consider it. Of course, he was going to. That's the whole point of the case. It was kind of a clever order that may or may not be correct in the Veterans Court. That whole thing is here. He ultimately didn't get any award of benefits on ataxia, right? That's correct, Your Honor. So there's been no prevailing on the merits of any claim, has there? No, there has not. Well, how about the VA finally doing its duty? It was sent back for them to do their duty in the first instance. He finally did it after all these years. Whether they're right or wrong will be determined in the course of the litigation. Well, it was sent back for them to do their duty pursuant to the VCA in regards to his OPCA claim. That was sent back. But a remand due to a change in the law does not confer prevailing party status upon Mr. Kelly. But the veterans claim, initially he didn't state which particular diagnosis. He was claiming compensation. He said that he was injured through Agent Orange. Your position is that he must identify the particular scientific medical diagnosis at the beginning? That's not our position, Your Honor, because the merits of the case aren't at issue here. Our position is that Mr. Kelly is not a prevailing party because the remand order did not grant him any merits relief. He had his claim for OPCA for which he is not seeking EASA fees. That was sent back pursuant to a change in the statute. He had another claim seeking remand of an ataxia claim. The veterans court ruled that he had never presented that claim to the board in the first instance. But using their discretion, stated that because they were sending back his OPCA claim anyways, if he presented that claim to the board in the first instance, then the board should consider it. So you're saying that it did have to be diagnosed and he had to say, I claim, although he was pro se, compensation for ataxia? That's not what we're saying in this case, Your Honor. In this case, what we're saying is that Mr. Kelly was not a prevailing party in regards to his ataxia claim. What should he have presented? We're trying to find out what it is that he should have presented in the first place to satisfy the court. Let me make sure I understand your question. What should he have presented for his OPCA claim? For everything. He presents a claim. The whole thing needs to be adjudicated. The VA is required to adjudicate the whole thing. They only adjudicated half of it. You're saying he didn't have to identify any particular medical condition. So all he had to do was submit the problem he has, whatever it is that he can tell them. And they decide, they decide the various theories that they may pursue and they evaluate it and make a judgment. That's true, Your Honor. They didn't do that yet. They did not in that first instance because the VCAA hadn't been passed yet. But that has been taken care of because the claim was sent back, was remanded back for further development of that claim. That has already happened. And Mr. McKelley is not seeking EJIA fees on that claim. And he specifically states that in his brief, that he's not stating EJIA, he's not claiming EJIA fees on his claim for OPCA. The board didn't make a mistake by not considering ATAXIA, did it? No, it did not make a mistake. Because at the time there was no obligation to consider things that were not raised. Is that correct? That's correct, Your Honor. So the law was completely complied with. And it's strange that someone would think they won when they lost, isn't it? I mean, even when they went back, they lost on ATAXIA. That's true, Your Honor. How could there be any sense of prevailing here? There cannot be. Even the remand can't be a prevail. It was gratuitous. Correct, Your Honor. We have a situation where, as well as the record shows, and as I recall, that the effect of Agent Orange was not fully appreciated after Vietnam until various medical studies were performed. And I'm not all that confident that there was never any burden on the VA to help the veteran. It's true that it reached the point where it became necessary to codify the burden. But I don't believe that before that the veteran was totally on his own, on his or her own, in trying to establish a claim before the VA. Is that accurate? Or your perception is that placing the burden on the VA was a change of law? Placing the burden on the VA, well, Your Honor, again, that gets to the merits of the claim. And the Veterans Court did not find that the agency had erred in their remand order by not further developing the claim as you have so described. And because there has been no agency error here and no relief upon the merits in the remand order, Mr. Kelly is not a prevailing party for the purposes of the issue. You know what's troubling about it? And it's bare bones. We have a situation where the veteran is experiencing certain disabilities. He asks for help. The VA turns him down. He gets a lawyer, and his fortunes change. One way or another, he gets a remand for further investigation. He may or may not ultimately prevail. But he would have been out of court completely but for the fact that at a point he sought legal assistance, and it was the legal assistance necessarily that got him the full review that he obtained, because otherwise he had lost. Wasn't it the VCAA that got him his relief? That's correct. It was the VCAA that got him his relief. Well, the VCAA basically told the VA to finally start doing what they thought they were doing all along, what they were supposed to be doing all along. They weren't going to finally put Congress to pass a law saying, do it. But that duty was there all along, and they weren't following their obligation. And in the end, that duty was fulfilled because the claim was sent back for further adjudication. The facts and issue of this case are actually substantially similar to those found in Akers. And actually the facts in this case are even stronger to support the argument that Mr. Kelly is not a prevailing party, whereas the parties in Akers, as this Court stated in his opinion, only received in the remand order a chance to basically get back in the ring to further develop their claims. In this case, Mr. Kelly was merely given an opportunity to get in the ring in the first place regarding his ataxia claim. It wasn't even so much a chance to further adjudicate his claim, but to present it to the Board in the first instance. Therefore, the Veterans Court's decision denying Mr. Kelly's claim is consistent with this Court's case law on prevailing party. For these reasons, the Court should affirm the decision of the Veterans Court. Any more questions? Thank you, Ms. Connealy. Mr. James, you have a couple of minutes. Thank you. Thank you for your patience. The allusion to the boxer analogy effectively requires Judge Rader with the greatest respect that I inform you that the boxer analogy in Akers was mistaken for three different reasons. First of all, boxers are not thrown out of rings. If they are, they've been fouled. Queensbury Rule No. 2 says boxers shall not hug or wrestle. The only other way to get him out of the ring is to project him out with a fist, which seems unlikely to me. Now, what's the analogy here? The foul in the boxing match was the error committed either by the BVA or the VA regional office. Second, when that kind of thing happens, it's not a question of letting the boxer back in the ring. The boxer should take up his complaint against the referee in the fouled match at the Boxing Commission, and that's what Mr. Kelly did. He went to the Boxing Commission Veterans Court of Appeals and said, I was fouled below and the referee didn't do anything to help me. Let me bring you back to prevailing party. The thing which concerns me is that if ultimately the veteran does not prevail after receiving all of the whether or not the law was changed by the statutory enactment, how can he be a prevailing party? Because the court below looks at it in incremental steps at the end of each of the appeals from each of the BVA decisions in that case. And so one only looks to see whether he prevailed on the civil action. And the statute itself, 2412D1A, refers in the first paragraph to civil action seeking review of agency decisions. And was I correct in understanding that the ataxia claim has already been considered? Your Honor, I'm embarrassed to say that I don't know. I thought I heard that it was considered and already rejected. Are you the attorney? I am a substitute for the argument, and I should have known. Well, then you would know the record in the case. What's happened in the ataxia claim? I don't know. But Mr. Kelly's position is it doesn't matter. You don't know? I don't know. Could we ask the government attorney once more if she knows? Yes, please come forward, Ms. Keneally, and see if you know the answer to this question. Yes, Your Honor. The ataxia claim has been considered, and it was denied, and it's now on its way to the Veterans Court on appeal. Considered by the board and denied? May I confer with agency counsel for a moment? That would be a good idea. I've been corrected, Your Honor. It's on its way to the board, not the Veterans Court. It was considered by the regional office? That's correct. By the regional office on the way. So the regional office has rejected it? Correct. The regional office has rejected the ataxia claim. Okay. Okay. Thank you. Mr. Kelly, how would you not know that? Lack of information. That's a rather important part of this case, isn't it? We contend that it is not. Why would you not know that? That's the simple question. Bad preparation. But it doesn't matter in your disposition of this appeal. I was going to ask you before you sat down, and I noticed that someone else had come to brief, and you just said you're substituting. Is this a pro bono case or what? No, it's not pro bono. I'm doing this as a kindness to Ms. Booth. Several weeks ago, the principal lawyer, her mother became seriously ill, and so she could not attend to this case, and I have taken the argument for her. I see. Okay. Any other questions? Any other questions? Okay. Thank you, Mr. James. Thank you. Ms. Connealy and counsel. The case is taken under submission.